Your Honor, the second case of the morning, call 211-0663, Peter State Illinois v. Dirk W. DeSomer, on behalf of the appellant, Ms. Kathleen Hamill, on behalf of the appellee, Ms. Mary Beth Burns. Good morning again. Good morning. This time we are representing the defendant appellant, Dirk DeSomer. Counsel, can I ask you a threshold question? Did you cite the Illinois rules of evidence in preparing this case, the briefs? I don't think I did. Is there a reason that you didn't? Oversight, if it was pertinent, I honestly don't know. You realize that the rules of evidence are now in effect in Illinois? Yes. And it appears, from my looking at this, that they were in effect when the case was tried. I just throw that out because I think it's important now that since we are clearly governed by those cited utterances, there is a rule on that, which probably we should get used to citing it, for your consideration. I do know that the rule of evidence is pretty much the same as the common law. Right. It is, but as Justice Hudson said, if we don't cite it, if the office of the appellate defender and the appellate prosecutor, if you don't cite it in your briefs, then we may overlook it, it doesn't get cited, and any body of case law that we make, future parties looking for authority might not find our dispositions. I do apologize for that. I do. Mr. DeSoma was convicted of domestic battery and resisting arrest. This morning we are challenging only the first conviction, domestic battery. This is one of the cases of the sort where the complainant did not testify. And so, consequently, Mr. DeSoma would not have been able to be convicted of domestic battery had the police officer who spoke to the complainant not testified that the complainant told him that the defendant had beaten her. The testimony- Unavailability of the declarant is immaterial, isn't it? Yes, at this point she simply did not appear for the state. But for purposes of the trial court's decision, whether or not she's available or not available is immaterial, correct? Yes, because this is a spontaneous utterance situation, so the statement would have been admissible had there been an evidentiary basis for the court's finding that an occurrence that was sufficiently startling to produce a spontaneous and unreflective statement had happened to the declarant, that she had had no time to reflect and fabricate before she made her statement, and that her statement related to the circumstances of the occurrence. You've got the officer saying he saw a white female running, didn't know who she was, and screaming that she needed help because her boyfriend was beating her. It doesn't sound like it's within the context of an exciting romance? Well, I think we have to do- well, what the law requires that we do is look at the totality of the circumstances. And the way that this whole event begins is that the officer was not summoned to the street in order- or to the house, rather, on a complaint or anything. He simply happened to be on the block, and while he was there he heard a slamming sound and then saw the woman come running out of the house. So doesn't that make it even stronger? In other words, it wasn't as if she summoned him to the house and had the opportunity to fabricate this. I mean, here she is responding allegedly to this incident that occurred, being beaten, and runs out of the house and in an anxious state. I mean, they described her demeanor, et cetera, and sees the police officer. In fact, we don't even know if she actually saw the police officer, but I guess she did. He was there. He heard it. So in the totality of the circumstances, it seems it's an even stronger situation for concluding that it was a spontaneous declaration. Well, the problem is that we don't really know that all of those things really were the case. What we know is that she came running out of the house, but it could have been because she was in the midst of an argument. Let me ask you this question. I'm sorry. Go ahead. With regard to those arguments that you make, which are page 10 or 11 of your brief, you discuss this and that these inferences, these are not proper inferences. The trial court's inferences were not proper. Well, my position is that there was not enough to support the inferences because so little was known. What about the statement itself? The court can consider as part of the totality of the circumstances the contents of the statement itself together with all the other facts and circumstances, correct? All that we have is Officer Wysak's paraphrasing of the statement. And Officer Wysak throughout his testimony seemed to be coloring everything he said. That's your interpretation. Did the trial court make that assessment? Did the trial court indicate that? Evidently not, because it's fine if it's contrary to that. Is it our job to re-weigh the evidence? It is simply to determine whether or not the court abused his discretion in admitting the statement. There were, for example, nevertheless, the officers claimed, among other things, that when he entered the house 15 to 20 minutes afterwards, he thought that it looked like things were in disarray as though there had been a physical confrontation. That's kind of a good example of how he colored his statement. The court should have done a sort on that, that the officer was not in a position to know what the house would look like, whether at all it looked like there was a physical confrontation. Wouldn't that be common sense? With the defendant, I believe he also testified, I think he thought he was drunk and he was cowering under a bed or piece of furniture. Yeah, that's true. But the real heart of our argument is that what needs to be shown is that the declarant was in a mental state that would not have allowed her to reflect. She was hysterical. And she ran. I mean, she fled the house. So she was fleeing and the contents of her statement and her demeanor was described as being anxious. She didn't call the police. I mean, what else could have been the situation in your view to find this? What other factors would have had to be there to find this a spontaneous declaration? Some sort of evidence regarding exactly what had happened, what it was. I think you indicated in your brief you're looking for blood, right? I mean, that's basically what you're saying. Unless the victim's bleeding, there can't be an excited utterance. That's what I take from your brief. No, not necessarily. The cases that you cite discuss blood. Well, the cases that I cite, there's more to mention. Besides what here were just red marks on her chest, the defendant acknowledged that there were red marks, but he said they were from sunburn, correct? Yes. So there was actually corroboration from the defendant's statement that there were red marks. So that observation was why the officer was at least accurate and was not colored for the trial, correct? That's true. That's true, although the officer did not say that the victim told him that the red marks were the result of the beating or anything like that. The big thing that's missing here is that we don't know what was going on in that house at all. We have her saying he was restraining me and beating me, but she's outside, so obviously the restraining and the beating happened prior to when she came out. And we don't know if it was a while prior or if it was just coincidental that she was able to run out at a time when a police officer was on the street. Well, why do we need to know that? I guess if we're talking about a startling event produces spontaneous and unreflective statements, it's almost like you're engrafting an additional element that it has to be true. There has to be some validity to what took place before the statement. Is that really what the case law says? When you start saying we don't know if this really happened or that really happened, is that a part of an excited utterance analysis? Well, it would be, I think, because it must be true that something happened that would have caused this person to be in the state. It must be true that the person, that the declarant was in a very upset mental state. Well, she said that. My boyfriend was beating me. She was running down the street at 1.30 in the morning.  Well, it could be, though, that this beating happened historically. I mean, it happened even 40 minutes earlier that she had, that it was mutual combat, it could have been. They could have been in some sort of a huge fight. Let me ask you this. I mean, you're asking us to make inferences that were not made by the trial court. For example, you say in your brief that possibly Langen was angry at the defendant and ran outside to accuse the defendant of attacking her. Where do you get that? Where is there evidence that creates that inference? I'm sorry. Where is the evidence of the inference that you make that she ran out and falsely accused her boyfriend of attacking her? Well, there's simply no evidence that why she ran out. She said she ran out because he was attacking her and he was restraining her. Yeah, well, I think what we're saying is missing is the time element, that we don't know when. There is a difference between a startling event and an infuriating event. I mean, both are actually startling, but if she was merely infuriated and there was a possibility that she decided to run out in order to get him in trouble. At 1.30 in the morning? At 1.30 in the morning? Who's she going to run into? I understand what you're saying. It's like part of the analysis is, look, you want an unreflected statement. You don't want somebody to basically trump up an allegation and benefit from it. But as Justice Dinoff says, who is she going to be running into at 1.30 in the morning if this wasn't a spontaneous act? She sat there and said, I'm going to go outside now, even though I was beaten a couple hours ago, run down the street and hope I run into something? No, I suppose our theory would be that she would be aware that the police were there, that she would look out the window and see there's the police and think, ah, I can get in trouble now. What if she had been beaten an hour beforehand and the defendant told her, you'd better not leave, don't leave this house. And she looks out, she sees a police officer, and she says, aha, it's my, I can be safe now, I can flee. Wouldn't that still be an excited utterance? Yeah, I think that would be. I think that would be comparable to like the Glynn case. What if it's her first opportunity to escape his clutches? It's still an unreflected statement, excited utterance related to those circumstances, correct? I think you're right about that. I think that, but we have nothing on this record to support that inference as well. If you're in honor to have no other questions, we ask that this defendant's conviction be reversed and this cause be made for a new trial. Thank you. Ms. Burns? Good morning, Your Honors. May it please the court, my name is Mary Beth Burns and I represent the people of the state of Illinois. We come before you this morning to ask you to affirm the defendant's conviction for domestic battery. I think this case rises and falls on the trial court's exercise of its discretion. The trial court properly viewed what was presented and in the exercise of his discretion determined that the statement should come in. We recognize that much of this case rises and falls on this statement, but surrounding evidence supported its admission. The officer who had been a patrol officer for about nine years saw redness on the woman's chest. I think to the extent that we're talking about inferences, a trial court can infer that a person who had been a patrol officer for nine years could recognize the signs of redness that may have come from rough handling rather than sunburn. We had a declarant who was shaking and clearly upset who had come out of the house either banging her way out of the house or banging the door, but immediately before he saw her, he heard the door banging. Part of her statement was that her boyfriend was beating her and wouldn't let her leave. So the implication is she either had to fight him to get out or it was her first opportunity to get out, but she sort of banged her way out. In addition, when they get into the house, they see it in disarray. I think one could infer that an officer who had been a patrol officer for nine years could tell the difference between a home that was simply unkempt and filthy versus a home that was in disarray from a confrontation. Now, in making this argument, I admit that nobody says there were lamps turned over or there were chairs turned over. It was simply his characterization. But I think the trial court, in admitting the statement, had the right to rely on his characterization. But, you know, he was not charged with domestic violence or not found guilty of domestic violence, but rather insulting or provoking nature. That's correct. And so how does that affect the argument here? Counsel argued that in her brief that this defendant wasn't charged with domestic violence. Well, again, the trial court's determination to admit the statement is separate from the trial court's determination of what verdict to enter. The trial court could easily have admitted the statement and then found the defendant so compelling that he could have acquitted him. Well, the trial court told the defendant, I'm giving you a break. I'm finding you guilty of insulting or provoking as opposed to bodily harm. Precisely. Both are domestic battery. Right, exactly. They're both classified under the code as domestic violence. Domestic battery is domestic violence per se, correct? In other words, if the defendant's convicted except a second time of domestic battery, the second time for punching or slapping and causing injury, it's going to be a felony, correct? Yes, I believe so. Based upon the prior conviction for domestic battery. So, really, it's a misnomer to characterize it as not domestic violence. It's still domestic violence. It's still domestic violence. You know, I think I understand the court drawing its distinction between a conviction for bodily harm versus insulting or provoking. And I understand the court's determination that he was giving the defendant the benefit of the doubt or whatever form of benefit he was giving the defendant. But I guess the distinction I would make is we're looking at the exercise of the court's discretion in admitting a statement. To the extent that the statement had other support and to the extent that the trial court apparently did not believe the defendant was credible, doesn't change the fact that the admission of the statement is what we're looking at. Ultimately, had the trial court found the defendant to be credible, the trial court was not compelled to enter a conviction. What the trial court was determining was what evidence it would consider in determining whether the state had proven its case. Based on the surrounding circumstances, the trial court properly admitted the evidence. And, again, this is, as is typical in many of these evidentiary rulings, it rises and falls on the totality of the evidence. I think that's acknowledged by Ms. Campbell. She seems to be honing in on part of the elements is whether the statement was made while still under the excitement of the event. Was that statement made on reflecting when the excitement of the event predominated? So how do you respond to her saying there's some gap there? We don't know what had happened before. Is that part of the analysis? It's entirely true that we don't know what happened before. But when making the analysis, one has to look at the totality of the circumstances that the officer is explaining. The officer heard a bang and saw a woman come out, either whether she had simply slammed the door getting out or whether she, in fact, had to push the defendant away to get out. There had been a banging, and apparently she got out in a rough manner. When he saw her almost immediately thereafter running down the street, she was clearly distressed and shaking. She also had red marks on her chest. When the officer went into the home, he saw in this form of disarray that he believed indicated there had been a confrontation. And when they found the defendant, he was hiding under the bed, which implied some form of non-normal activity. And so it would appear that within a fairly short period of time, certainly short in a period of time, for her to still be distressed and shaking. It wasn't like she came out and said, that jerk hit me a couple of hours ago and thank God you're finally here. It's that she said he was beating me and wouldn't let me go. You know, that's a fairly compelling statement. The fact that ultimately it did not appear that she had injuries consistent with having been beaten doesn't mean that the statement is inadmissible. I'm sorry, what about the timing of the statement vis-a-vis her seeing the police officer? Did she see the police officer first and then did he question her and she make the statement? Or how did that transpire? My understanding is that she ran out of the house, went to the policeman and started talking before he had said anything. So she encountered him, she accosted him, he didn't accost her, basically. Right. He saw her run out. Right. He was coming to respond to another call and saw her run out. Right. And again, from the record, I don't think we know the status of his handling of the other call or how long he had been on the scene or whether she was in a position to see him for any period of time before she came out. What about the defendant's argument that the fact that she didn't summon the police or make a 911 call herself weakens the state's argument? I think the argument cuts both ways. When Mr. Pisenica wrote the brief, he argued just the opposite, that it's more compelling that in fact she hadn't called. We don't know if she was unable to call because it implied that the defendant had been holding her and the red marks on her chest could indicate that somebody grabbed her from the front. We honestly don't know, but our position is that it supports it being shorter in time and that she told the police as soon as she was in fact in a position to do so. And again, I think it's one of these things where the trial court, based on the totality of circumstances, was drawing inferences because the record is silent as to the precise timing, even as to how long the officer had been on the scene. If she makes a 911 call and then there's a period of delay between the 911 call and the arrival of the police, then the argument would be that it's testimonial and Crawford precludes the admissibility of the state, correct? Yes and no. Yes, Crawford would perhaps preclude the admission, but we know from the U.S. Supreme Court's case in Davis that a whole lot will rise and fall on the surrounding circumstances. We don't know at the point when she made the 911 call if there was an ongoing emergency. We don't know if he'd been beating her and was now about to set the house on fire. There's an enormous range of possible factors that could lead to a 911 call and things that could occur between the 911 call and the police coming to the scene. So it's one of these things where it would really be, again, as with almost all evidentiary rulings, entirely based on the totality of the circumstances. If there are no other questions, we continue to maintain the totality of the circumstances here in support of the trial court's ruling. Thank you. Thank you. Thank you very much, counsel. The court will take the matter under advisement and render a decision in due course. The court stands in recess for the day. Thank you.